## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SAMEER JAIN, *et al.*,

      *Plaintiffs,*

  vs.                        Case No. 21-2126-EFM

RANDEL SOLUTIONS, LLC, *et al.*,

      *Defendants.*

### MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Bifurcate filed by Defendants Roushan Kumar, Anjushree Kumar, Kulture Kurry, and Kansas Kurry. (Doc. 54). Defendants seek an order under which the calculation of any punitive damages would be determined only after the jury determines at trial that Defendants are liable for such damages. Plaintiffs Sameer and Upma Jain oppose the motion. For the reasons stated below, the Court denies the motion.

### I.     Factual and Procedural Background

Plaintiffs are married and citizens of India. In their Amended Complaint filed April 2021, Plaintiffs contend that they were lured to the United States by the promises of Roushan Kumar and his wife, Anjushree Kumar, and were effectively coerced into involuntary servitude by working at businesses owned by or associated with the Kumars. Plaintiffs advance claims for unlawful forced labor in violation of the federal Trafficking Victims Protection Act (TVPA), 18

U.S.C. § 1589; human trafficking in violation of K.S.A. § 60-5003; violation of the Kansas Minimum Wage Maximum Hours Law (KMWMHL), K.S.A. §§ 44-1201, 44-1203; violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.; breach of contract; unjust enrichment; and intentional infliction of emotional distress.

Defendants moved to dismiss the action for failure to state a claim.  (Doc. 18).  On July 29, 221, the Court held that, as Sameer Jain's contract was only with Randel Solutions, the Kumars were not proper parties to the breach of contract claim.  The Court also dismissed the KMWMHL claim against Anjushree Kumar, but otherwise denied the motion to dismiss.  (Doc. 29).

On August 12, 2021, Plaintiffs filed a Second Amended Complaint reflecting these modifications.  The complaint asks for punitive damages under Count I (alleging forced labor in violation of the TVPA) and Count II (alleging human trafficking in violation of Kansas law).

## II.    Legal Standard

Federal Rule of Civil Procedure 42(b) provides that a court may bifurcate a proceeding for the trial of separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize."  Courts have "broad discretion in deciding whether to sever issues for trial.[1]  Nevertheless, bifurcation is "the exception and not the rule, and the moving party bears the burden of establishing that bifurcation is warranted."[2]   Granting relief under Rule 42(b) is "dependent on the facts and circumstances of each case."[3]

## III.    Analysis

---

[1] *Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir. 1985).

[2] *Byrne v. Yale Univ.*, 2020 WL 5258998, at *13 (D. Conn. 2020) (citation omitted).

[3] *Hampton v. Dillard Dep't Stores*, 18 F. Supp. 2d 1256, 1268 (D. Kan. 1998) (citation omitted)

While Defendants argue in their motion that bifurcation would yield practical benefits in convenience and economy, the primary thrust of their motion is that evidence relating to their financial assets could cause prejudice, as such evidence "increases the risk that the jury's determination of those other issues will be infected by financial evidence that has no probative value with respect to those issues."

Plaintiffs argue in their Response that bifurcation is unjustified, and note that the Motion to Bifurcate was filed shortly after Defendants objected to producing discovery relating to their financial assets.  Plaintiffs suggest that the present motion is "a thinly veiled attempt to avoid producing discoverable information."

Defendants' Reply does little to rebut this charge.  To the contrary, after repeating their argument for bifurcation in a purely conclusory fashion, Defendants immediately proceed to argue against the discovery of their finances, contending that Plaintiffs have are now out of time to move to compel such information under D. Kan. Rule 37.1(b).  And they argue any discovery on their financial status is better left until after the jury determines punitive damages are warranted, citing two decisions approving such an approach, *Ramirez v. IBP, Inc.*[4]  and *American Maplan Corp. v. Heilmayr*.[5]

The extent of discovery is properly committed to the Magistrate Judge.  However, to the extent Defendants suggest that bifurcation finds support in the cited cases, the Court observes that both decisions are highly equivocal.[6]  Much more fundamentally, both courts deferred

---

[4] 1996 WL 455022 (D. Kan. 1996).

[5] 203 F.R.D. 499 (D. Kan. 2001).

[6] *See Ramirez*, 1996 WL 455022, at 3 (contrasting "more typical cases" and stressing that "*this case is an instance* where the better practice is to delay the more detailed and complete discovery into punitive damage calculations until after the jury verdict") (emphasis added); *Am. Maplan,* 203 F.R.D. at 503 ("*While other judges in*

discovery at a time when some federal courts accepted the applicability and constitutionality of K.S.A. 60-3702(a).

Under that Kansas statute, a party seeking punitive damages must first present its claim to the jury on the issue of liability, and requires a "separate proceeding . . . conducted by the court to determine the amount of such damages to be awarded." *Ramirez* and *American Maplan* thus provide little guidance for deferred discovery after the Tenth Circuit expressly recognized the Kansas statute does not control the procedure for awarding punitive damages in federal courts. In *Jones v. United Parcel Service*,[7] the court stressed: "The Supreme Court has repeatedly affirmed the historical nature of the Seventh Amendment right to a trial by jury in federal cases involving punitive damages. Its decisions, taken together, indicate that this right includes the right to a jury determination regarding the amount of punitive damages."[8]

The authorities otherwise cited by Defendants in their Reply as supporting bifurcation are equally unpersuasive. In *Koch v. Koch Industries, Inc.*, the court bifurcated the issues of liability and punitive damages, but it did so "[i]n light of the parties' agreement" for this approach.[9]

In *Baker v. Equifax Credit Information Servs.*,[10] the court agreed to a temporary and limited bifurcation in a federal employment action, in a ruling which provides little support for

---

*the district may permit pretrial discovery of such information*, this court's practice is to defer until after trial on liability the discovery of financial data relating to punitive damages when the issue of the amount of punitive damages is bifurcated from the issue of liability for such damages, as where the claim is made under the law of Kansas.") (emphasis added).

[7] 674 F.3d 1187 (10th Cir. 2012).

[8] *Id*. at 1205-06 (Fed. R. Civ. P. 38 "answers the question in dispute and requires that the jury determine the amount of the punitive damage award in federal court, despite conflicting state law."). Judge Lungstrum, who decided *American Maplan*, reached the same conclusion two years earlier. *See Cap. Sols., LLC v. Konica Minolta Bus. Sols. U.S.A., Inc*., 695 F. Supp. 2d 1149, 1152 (D. Kan. 2010) ("[T]he Seventh Amendment does require that the jury also be allowed to determine the amount of any punitive damages awarded.").

[9] 2 F. Supp. 2d 1416, 1424 (D. Kan. 1998).

-4-

Defendants' position.  The court stressed that "[f]ederal courts routinely try actual and punitive damage issues together," and that the defendant had presented no "persuasive reason to depart from routine practice."[11]   The court granted bifurcation for a determination of the amount of damages after noting conflicting authority on whether K.S.A. 60-3702(a) required bifurcation in federal trials and that the issue was "far from settled."[12]   The procedure adopted by the court meant that it "need not resolve the issue," while also making clear there would be little delay in the procedure, as "if the jury finds liability for punitive damages, the parties will *immediately* move forward with the presentation of evidence which will assist the jury in determining the amount of punitive damages to be awarded."[13]

Unlike the typical punitive damages case, it is not immediately apparent that Defendants' financial resources are wholly unrelated to the issue of liability.  To the contrary, Plaintiffs make repeated reference to the financial resources of the Kumars and their businesses as playing a direct role in how events unfolded.

The Complaint expressly alleges that the Kumars represented themselves as "very well connected both in India and the United States," and that they played on Roushan Kumar's "status and influence."  According to the Amended Complaint, "Roushan and Anjushree had Sameer and Upma convinced they were incredibly powerful and influential." Plaintiffs allege that Roushan got Sameer to help with one of his "business's accounting and administrative needs." However, Roushan failed to pay Plaintiff Sameer for his work in India, "citing financial

---

[10] 1998 WL 101829 (D. Kan. 1998).

[11] *Id*. at *2.

[12] *Id*. at *2 n. 1.

[13] *Id*. at 2 (emphasis added).

hardship," and induced him to move to the Untied States based on promises of financial assistance.  After Plaintiffs moved to the United States, "Roushan told Sameer that he could not pay him yet, advising Sameer that doing so before the next calendar year would lead to issues with the IRS."  Roushan later continued to use his financial position against Plaintiff, stating "he spent thousands of dollars on Sameer's visa and airfare; therefore, Sameer was required to do as Roushan instructed or Roushan would report him to USCIS."

The Amended Complaint thus alleges that the Defendants leveraged their actual and apparent financial condition to coerce Plaintiffs into involuntary service.  Defendants' request to bifurcate—and restrict any reference to their finances until after liability is determined—is in effect a motion *in limine*, lodged long before the completion of discovery or dispositive motions. The effect of the motion would be to exclude potentially relevant evidence in support of the Plaintiffs' allegations.

The determination of whether, and how, to grant relief under Rule 42(b) is more appropriately reserved until after the conclusion of discovery and entry of a pretrial order.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Bifurcate (Doc. 54) is denied.

**IT IS SO ORDERED**.

Dated this 18th day of March, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE